IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ROBERT LEE FOSTER,   #194085, ) | Civil Action No. 3:08-25-PMD-JRM |
| )  | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| LARRY W. POWERS, DIRECTOR OF ) | **REPORT AND RECOMMENDATION** |
| SPARTANBURG COUNTY JAIL; ) | |
| TONY FISHER, DIRECTOR OF ) | |
| SPARTANBURG CITY POLICE DEPT.; ) | |
| OFFICER J. L. HALL; ) | |
| BRAD JAMES; AND ) | |
| K. D. SWAD, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action was filed by Plaintiff on January 4, 2008.[1] His allegations concern his arrest and his detention at the Spartanburg County Detention Facility ("SCDF"). Plaintiff is currently an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections. Defendant Tony Fisher is the Director of the Spartanburg Public Safety Department ("SPSD") and J. L. Hall ("Hall") and Brad James ("James") are police officers with the SPSD (collectively the "Public Safety Defendants"). Defendant Larry W. Powers is the Director of the SCDF and K. D. Swad ("Swad")[2] is an employee of the SCDF (collectively the "Detention Facility Defendants"). The Public Safety Defendants filed a motion for summary judgment on May 30, 2008. On June 2, 2008, the Detention

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] In his complaint, Plaintiff named Booking Officer Name (Unknown) as a defendant. The undersigned, in a separate order, granted Plaintiff's motion to substitute Swad for Booking Officer Name (Unknown).

Facility Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on June 4, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on June 26, 2008.

## DISCUSSION

Plaintiff alleges that Defendant Hall searched him and arrested him without probable cause. He also claims that Defendant Swad subjected him to an unconstitutional search at the SCDF. Plaintiff appears to allege that he was housed in overcrowded conditions at the SCDF and that Hall defamed him in statements made at his preliminary hearing.[3]

The Public Safety Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff alleged no constitutional violation by Defendant Fisher and Fisher cannot be held liable on the basis of respondeat superior; (2) the officers had probable cause to arrest Plaintiff; (3) these Defendants are entitled to qualified immunity; and (4) these defendants are entitled to summary judgment as to Plaintiff's defamation claim. The Detention Facility Defendants contend that they are entitled to summary judgment because: (1) Defendant Powers cannot be held liable on a theory of supervisory liability; (2) Plaintiff had no right to privacy such that he fails to state a claim for an unreasonable search at the SCDF; and (3) these Defendants are entitled to qualified immunity.

---

[3]Plaintiff also appears to claim that his public defender violated his equal protection and due process rights because she failed to request that the charges against him be dismissed. The public defender is not named as a defendant in this action. Further, the public defender is not a state actor subject to suit under 42 U.S.C. § 1983. See Polk County v. Dodson, 454 U.S. 312, 317-324 and nn. 8-16 (1981).

1.     Arrest Claims

Plaintiff alleges that he was out on a nightly stroll on October 3, 2007, when Defendants Hall and James illegally stopped, searched, and arrested him.[4] The Public Safety Defendants contend that Plaintiff fails to state a claim because the SPSD officers had probable cause to arrest Plaintiff.

Plaintiff's claims concerning his stop, search, and arrest are barred under Heck v. Humphrey, 512 U.S. 477 (1994). In Heck v. Humphrey, the Supreme Court determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based. The court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487.

---

[4] Plaintiff also may be attempting to claim that Defendants' actions were racially motivated. Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim under § 1983. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated."). Plaintiff has not produced any evidence that his race played any part in the alleged incidents.

Here, Plaintiff's allegations concern his arrest for the crimes for which he was found guilty. See Hall Aff., Exs. 3 and 4. Plaintiff has not shown that these convictions have been overturned or otherwise impugned. Thus, to the extent that Plaintiff is claiming that there was insufficient probable cause to stop and detain him or that his arrest warrant was deficient, his claims are barred under Heck v. Humphrey, supra.[5]

Even if Plaintiff's arrest claims are not barred by Heck, he fails to establish a Fourth Amendment claim. Under the Fourth Amendment an officer may make a warrantless arrest of an individual in a public place, if the arrest is supported by probable cause. United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004) (citing cases). "Probable cause" sufficient to justify an arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002). Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Id. (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992)).

---

[5]In certain circumstances, a plaintiff may prevail on an excessive force or illegal seizure claim without implying the invalidity of the underlying conviction. See Hughes v. Lott, 350 F.3d 1157 (11th Cir. 2003); Riddick v. Lott, 202 Fed. Appx. 615 (4th Cir. 2006) (unpublished). Thus, for purposes of summary judgment only, it is assumed that Plaintiff's excessive force claims are not barred by Heck.

Under the totality of circumstances, Defendants Hall and James had probable cause to believe that Plaintiff was involved in a crime at the time they stopped and arrested Plaintiff. James states that on October 3, 2007, he was on patrol in the Norris Street area in Spartanburg. He provides that the area is known as a high crime area due to frequent arrests involving drugs, weapon, and shootings; patrols in the area are conducted frequently; and the SPSD has received numerous complaints from citizens in the area regarding narcotics and other criminal activity. At approximately 8:30 p.m., James spoke with Plaintiff and an individual named Wendell Lewis ("Lewis") who were standing on the sidewalk in front of 321 Norris Street. The house at 321 Norris Street was vacant and had a "No Trespassing" sign in front. James states that he warned both subjects that they needed to leave and they could not loiter in the area.

James states that he previously charged Lewis on March 21, 2007, with possessing approximately twenty grams of marijuana in the Highland Community (which is close to the Norris Street location). He states that he recognized Plaintiff, who had been charged in the past with possession of drug paraphernalia. The City of Spartanburg has an ordinance[6] prohibiting loitering

---

[6]This ordinance provides, in part:
(a) It is unlawful for any person to loiter in or near any thoroughfare, place open to the public, or near any public or private place, in a manner and under circumstances, manifesting the purpose to engage in drug-related activity contrary to any of the provisions of state law.
(b) Among the circumstances which may be considered in determining whether such purpose is manifested are:
    (1) Such person is a known unlawful drug user, possessor or seller....
(2) Such person has been given due notice, either verbal or written, on any occasion prior to any arrest, within one (1) block of the area where the arrest occurred....
*****
(8) The area involved is by public repute known to be an area of unlawful drug use and trafficking.
City of Spartanburg Municipal Code § 13-300.

5

for the purpose of drug-related activity. James states that after the first warning, Lewis and Foster left the area, but about a half an hour later he found them standing in the same location in front of 321 Norris Street. He again warned them that they needed to leave and they again left. James states that after another half an hour, he again observed Plaintiff and Lewis standing in the same location. He placed Lewis under arrest and Hall placed Plaintiff under arrest. James states that before Plaintiff was handcuffed, Plaintiff removed a metal crack type pipe from his pants pocket and dropped it under Hall's vehicle. The crack pipe was recovered and placed into evidence. James Aff., Paras. 3-6. Hall states that Plaintiff and Lewis were found to be standing in front of 321 Norris Street on October 3, 2007. He states that after he told Plaintiff and Lewis to leave twice within about an hour, the two returned to the same location and were arrested. Hall states that before Plaintiff was handcuffed, Plaintiff removed an object (later determined to be a metal pipe commonly used for crack) from his (Plaintiff's) pants and dropped it under Hall's patrol car. Hall states that he transported Lewis and Plaintiff to the Spartanburg County Detention Center where they were booked. Hall Aff., Paras. 3-5, Ex. 3 (Incident Report).

    2.    <u>SCDF Search Claims</u>

Plaintiff appears to allege that the search of him at the SCDF was improper. The SCDF Defendants contend that Plaintiff had no expectations of privacy in the booking process or at the SCDF, such that Plaintiff fails to cannot state a claim. They also argue that the search of Plaintiff was not unreasonable, as the SCDF has a legitimate governmental interest in performing searches to prohibit contraband and illegal substances from entering its facility. Defendants argue that the recovery of the illegal substance from the trash can did not violate Plaintiff's rights.

Plaintiff's claims concerning the search at the jail are also barred by Heck, as discussed above. Further, Plaintiff fails to show that his constitutional rights were violated during the search of him at the SCDF.

Powers states that the search of an inmate upon entry to the SCDF is necessary to inventory the inmate's property and to ensure the safety of the facility. Specifically, it is conducted to protect the inmate from theft of his possessions, protect the staff of the SCDF from false accusations of theft, and to remove dangerous and illegal items from an inmate prior to his incarceration. Powers Aff., Para. 5. Swad states that he conducted a search of Plaintiff in the intake room of the SCDF to document Plaintiff's property and locate any possible contraband. He states that during the search, Plaintiff turned away from him, he saw Plaintiff's hand go to Plaintiff's mouth and then back down, he observed an object leave Plaintiff's hand and fall into the trash can, and he heard the object hit the metal (of the trash can). Swad states that the room had just been cleaned and there was nothing else in the trash can. He recovered from the trash can a rock-like, off white substance that was covered in saliva and wrapped in plastic. Swad also noted that Plaintiff had saliva on his chin. Next, Swad requested assistance, Defendant Hall entered the room, and Swad submitted the object to Hall in a plastic bag. Swad later learned that the substance tested positive for crack cocaine. Swad Aff., Para. 3.

An inmate has no expectation of privacy in his prison cell, therefore he cannot be subjected to an "illegal" or improper search. When it considered this issue, the Supreme Court noted that, "prisons are not beyond the reach of the Constitution," but also found that prisoners are accorded only those rights which are "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Hudson v. Palmer, 468 U.S. 517, 523 (1984). Although the

court discussed the wide variety of situations in which prisoners retain constitutional rights, it noted that inmates' rights were curtailed in many areas, including any "subjective expectation of privacy that a prisoner might have in his prison cell. . ." Id. at 526.[7] Here, Plaintiff has not shown that the search violated any of his constitutional rights.

In Logan v. Shealy, 660 F.2d 1007 (4th Cir.1981), cert. denied, 455 U.S. 942, the Fourth Circuit stated that:

> Strip searches of detainees are constitutionally constrained by due process requirements of reasonableness under the circumstances. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

Id. at 1013 (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Here, Plaintiff fails to show that the search at the SCDF was unreasonable. It was conducted in a separate room by a male officer. The SCDC had a legitimate governmental interest in prohibiting contraband and illegal substances into the facility. It was reasonable to search Plaintiff for contraband based on the charges on which he was arrested.

3.      Conditions of Confinement

Plaintiff may be attempting to assert a claim concerning his conditions of confinement at the SCDF. He claims he was subjected to "intense" overcrowding. Complaint at 5. The SCDF Defendants contend that Plaintiff has not stated any specific allegations against them as to these

---

[7]The Fourth Circuit generally has applied "the same legal standard for detainees as for convicted inmates with due regard for the particular circumstances of pretrial detainment," because "the concern for security is the same for pretrial detainees as for convicted inmates." Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir.1993).

claims, he has not stated any constitutional violation based on his conditions of confinement at the SCDF, and he has not shown that he suffered any physical injury as a result of the alleged conditions.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions...the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(Citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978), cert. denied, Moffit v. Loe, 446 U.S. 928 (1980).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. at 538.

Plaintiff fails to show any expressed intent on the part of Defendants to punish him. Additionally, Plaintiff fails to show that his living conditions caused him anything more than de minimis injuries. Further, there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[8]

42 U.S.C. § 1997e(e).

    4.    Supervisory Liability

Defendant Power contends that he cannot be held liable on a theory of supervisory liability. Defendant Fisher contends that he cannot be held liable on a theory of respondeat superior.

The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action

---

[8] The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Powers or Defendant Fisher was personally responsible for any of the alleged incidents. Plaintiff has not alleged that Powers and/or Fisher were personally present and/or involved in any way in Plaintiff's arrest or search. Powers denies any involvement in Plaintiff's arrest and subsequent search on October 3, 2007, other than his employment as Director of the SCDF. Powers Aff., Para. 4. Fisher denies any personal involvement with Plaintiff's arrest. Fisher Aff., Para. 3. Further, Plaintiff has not shown that Defendant Powers or Defendant Fisher was deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Defendant Powers and/or Defendant Fisher is liable on a theory of respondeat superior or supervisory liability.

     5.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established

> statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

6. <u>State Law Claims</u>

Plaintiff also appears to be attempting to assert a claim for defamation under South Carolina law. Any such claims are based on state law and premised on supplemental jurisdiction. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), the remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that the motion for summary judgment of Defendants Powers and Swad (Doc. 28) and the motion for summary judgment of Defendants Fisher,

Hall, and James (Doc. 27) be granted.

                    Respectfully submitted,

                    Joseph R. McCrorey
                    United States Magistrate Judge

October 7, 2008
Columbia, South Carolina

    **The parties' attention is directed to the important information on the attached notice.**

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).